SHOWALTER, Circuit Judge.
On the 4th day of October, 1884, the Bankers’ & Merchants’ Telegraph Company of Indiana, a corporation created under the laws of that state, exhibited its bill in the circuit court of the United States for the district of Indiana against the Bankers’ & Merchants’ Telegraph Company of New York, a corporation organized under the laws of the state of New York, wherein it averred that the New York company was a principal or parent corporation, “with auxiliary or subordinate corporations, under the same name, for local convenience and requirements, in the states of *962 Massachusetts, Connecticut, New Jersey, Pennsylvania, Delaware, Ohio, Indiana, Illinois, Michigan, Tennessee, Kentucky, Texas, New Hampshire, and elsewhere, and likewise in Baltimore, in the state of Maryland, and in the District of Columbia.” It was further averred “that all the said corporations so existent are separate and distinct corporations of each of the states aforesaid, and are controlled and managed by, and wholly identified with, the said Bankers’ & Merchants’ Telegraph Company of New York, with local organization, for purpose of convenience, in conformity with law; the capital stock of said corporations being largely in possession of the said principal, parent, or head corporation.” The bill went on to allege, in substance, that the New York corporation had constructed and operated, as part of its telegraph system, the telegraph lines of the complainant in the state of Indiana; that, in the construction and management of these lines of complainant, the New York company had incurred debts to divers persons and corporations; “that the said debts, or portions thereof, are claimed to be in law and equity just obligations against the property of complainant,” but that a large portion of the general indebtedness of the New York company was not chargeable upon the property of the complainant, and that the New York company was wholly insolvent; “that the value of your orator’s property consists in its being kept together and intact, to be operated as a whole, without a break or division^ in connection with the property and lines of said Bankers’ & Merchants’ Telegraph Company of New York, and under one head or management, and that, owing to the peculiar nature of the business, the management has to be centralized and managed accordingly; that, owing to the said intimate relations between your orator and the said Bankers’ & Merchants’ Telegraph Company of New York, and owing to its management, operation, and control of your orator’s lines and property, the accounts and business thereof have been so blended together that it is impossible for your orator to state, it having no information with respect thereto, what proportion of said property is the property of your orator, and what proportion thereof is distinctly the property of said Bankers’ & Merchants’ Telegraph Company of New York;” that a suit had lately been commenced by one Austin G. Day, in the supreme court of the state of New York, wherein Richard S. Newcombe and James Gr. Smith had been duly appointed receivers of the said New York company, and all its assets, property, and effects had become vested in said receivers. Among other things, it was prayed in the bill that said Newcombe and Smith be appointed receivers of the telegraph property of complainant and defendant in the state of Indiana; in other words, that the receivership in New York be by the order of the court extended so as to cover the property of the complainant and defendant in the state of Indiana. On the day of the filing of this bill, namely, the 4th of October, 1884, an order was made in said cause, whereby Newcombe and Smith were appointed receivers “of all and singular the lines, property, and assets, real, personal, or mixed, of the complainant, the said Bankers’ & Merchants’ Telegraph Company of Indiana, and respondent, the said Bankers’ & Merchants’ Telegraph Company of *963 New York, with the usual powers and duties of receivers,” etc., “including the power and authority to demand, sue for, collect, receive, and take into their possession all the goods, chattels, rights and credits, moneys and effects, lands and tenements, of every kind' and description, belonging to said complainant and respondent, or either of them, situated within the jurisdiction of this court, and manage and hold the same under the authority of this court.” The usual provision for a bond and an injunction followed in the order.
It may be assumed, from the showing of the record, that a corporation called the Merchants’ Telegraph Construction Company, or receivers thereof acting in its behalf, had, prior to the time of the appointment of the receivers by the New York court, seized in some way for debt the lines of the Bankers’ & Merchants’ Telegraph Company of New York, situated in Ohio. On the 3d day of November, 1884, the following order was entered in the supreme court of New York in the case of Day against the Bankers’ & Merchants’ Telegraph Company of New York:
“Upon the order herein, dated October 30, 1884, wherein John E. Ward, Esq., was appointed referee to take the testimony and proofs, and report thereon, with his opinion, in the matter of the Merchants’ Telegraph Construction Company, upon reading and filing said order, the petition of the receivers of the Bankers’ & Merchants’ Telegraph Company, upon which said order was granted, the referee’s oath herein, the testimony and proofs taken before said referee, and his report and opinion thereon, and due deliberation having been had thereon, and it appearing satisfactorily to the court that it is for the best interest of the Bankers’ & Merchants’ Telegraph 'Company, and those therein interested, that a redemption of the lines mentioned in said report should be had at once, it is, on motion of Joseph Fottreca, counsel for said receivers, ordered:
“(1) That the receivers of the Bankers’ & Merchants’ Telegraph Company be, and they are hereby, instructed to at once issue special receivers’ certificates, in an amount not exceeding one hundred and fifty thousand dollars, to be payable at such time as said receivers may think best, not exceeding two years from their date, and to be redeemable by said receivers at any time within said period, to bear interest at the rate of six per cent, per annum, payable semiannually, and to contain such conditions as may be deemed necessary and requisite, said issue of said certificates to be secured by a trust deed, in the nature of a first mortgage lien, for $150,000 on all the lines of telegraph at and between Freeport, in Ohio, and Hammond, in Indiana, and at and between Pittsburg, in Pennsylvania, and Indianapolis, in Indiana, with a branch to Cincinnati, in Ohio, and to cover all the intermediate points, and to be prior as a redemption debt-to every other lien, claim, or incumbrance thereon.
“(2) That of said issue of $150,000, an amount of $130,000 in said certificates, so secured, be delivered to said Merchants’ Telegraph Construction Company, or to such persons as it shall designate, in full liquidation and payment of the indebtedness of the Bankers’ & Merchants’ Telegraph Company to it, in relinquishment of the possession and substitution of the receivership of said construction company.
“(3) That the balance of said $150,000 in duplicate, to wit, $20,000, to be applied to the completion of the lines between Pittsburg and Indianapolis, and that the said receivers have such power and authority with reference thereto as is necessary to finish the construction thereof and place the same in working order.
“(4) That the said receivers have full power and authority to make, execute, and deliver such instruments, writings, or papers, under seal or otherwise, as may be requisite and necessary to effectuate the plan for the redemption of said lines above named, and to fully carry out and consummate the provisions of this order.”
*964 Between the 6th and 12th days of November, 1884, the certificates were issued, and the mortgage to secure the same made and delivered. Each certificate contains the following recital:
“Said certificates are hereby declared to be a debt of the receivers, incurred for the benefit and protection of the property in their hands, and, until full payment thereof, to be a first lien and charge upon all telegraph lines and property which are located between Freeport, O., and Hammond, Ind., and between Pittsburg, Pa., and Indianapolis, Ind., and between Richmond, Ind., Eaton, O., and Cincinnati, O., according to a certain deed of trust, or mortgage, given to secure this issue of certificates covering said lines and properties, executed by said receivers to the Farmers’ Loan & Trust Company, as trustees, dated November 7, 1884. Transferable upon the books of the receivers upon surrender of this certificate.”
The mortgage, in its introductory part, contains, among others, the following recital:
“Whereas, heretofore certain lines of telegraph were built, or partly built, for the Bankers’ & Merchants’ Telegraph Company, by the Merchants’ Telegraph Construction Company or its assignors, said lines extending from Free-port, in the state of Ohio, through said state, to Indiana, and through said state to Hammond therein, and likewise from a point at or near Pittsburg, in the state of Pennsylvania, westward, through Pennsylvania and Ohio and Indiana, to Indianapolis, in the state of Indiana, with a branch from said last-named line to Cincinnati, in the state of Ohio; the said lines aggregating about 765 miles of pole line, be the same more or less."
Also, after setting forth in part the order of November 3d by the New York court, the paragraph marked “1” as before quoted in this opinion being therein recited in full, the following:
“And whereas, to that end, the parties of the first part have issued, or are about to issue, special receivers’ certificates, as directed by said order of said supreme court of the state of New York, in an amount of one hundred and fifty thousand dollars, to cover all the lines and property, of every kind and nature, in and between tbe points and places mentioned in said order, which are and are to he prior as a redemption debt to every other lien, claim, or incumbrance on said lines, and to be a first lien and charge thereon.”
And afterwards, as descriptive of the property mortgaged, the following:
“All and singular the said line or lines of telegraph to, from, and between the said points and places hereinbefore at large set forth and described, and so much thereof as may now be built,- or which may be hereafter constructed and completed, together with all tbe lines, property, franchises, telegraph lines, cables, poles, wires, instruments, tools, apparatus, offices, fixtures, contracts, leases, rights, claims, interests, and demands, of every kind, nature, and description whatsoever, now held, owned, or possessed by the said receivers, or by the Bankers’ & Merchants’ Telegraph Company, or which may he at any time hereafter acquired in connection with said line of telegraph, more particularly hereinbefore described.”
Later, and at the November term of the circuit court of the United States for the district of Indiana, and on the 3d day of December, 1884, in the cause first above mentioned, was entered an order in words following:
“Upon reading and filing the petition of Richard S. Newcombe and James G. Smith, as receivers of the Bankers’ & Merchants’ Telegraph Company, appointed herein by this court, together with all the papers and documents thereto annexed, and it appearing to he necessary and essential that the lines mentioned and described in said papers he forthwith redeemed, so as to save to the said receivers and the interest they represent the large amounts now *965 invested therein by the Bankers’ & Merchants’ Telegraph Company, now represented by said receivers, it is, on motion of counsel for said receivers, ordered that the prayer of the said petition be, and the same hereby is, granted, and the action of the said receivers in making, executing, and delivering the certificates and mortgage mentioned and described in the said papers is hereby approved, ratified, and confirmed, and the order of the supreme court of the state of New York, dated the 3d day of November, 1884, is hereby made the order of this court, with the same force and effect as if originally made herein, and the action of the receivers thereunder, so far as the same affects property within this state, and concerning the making and issuing of such certificates and mortgage, is hereby confirmed and approved.
“And it is further ordered that the said one hundred and thirty thousand dollars of receivers’ certificates shall be delivered to the receivers of the said Merchants’ Telegraph Construction Company.
“And the order of the supreme court of the state of New York, above mentioned, is in the words following, to wit: [Here followed a copy of that order.]”
Afterwards, at said November term, and on tbe 15tb day of December, 1884, there was made in said cause tbe following entry:
“Come the parties, and it is now ordered that the order entered in this suit on the 3d day of December, 1884, be, and the same is, modified so as to read as follows: [Here followed the entry of December 3d, except the paragraph containing the direction to deliver, etc., next before the last in said entry, as above quoted.]”
It is to be implied, from tbe record, that a portion of tbe receivers’ certificates, to the face value of $130,000, were, in November, 1884, delivered to tbe Merchants’ Telegraph Construction Company, in extinguishment of its lien on tbe lines in Ohio, and that by said company, or its receivers, said certificates were assigned to one Stokes, or to Stokes and De Castro. In tbe same month Stokes and De Castro turned them over for their full face value in cash to one Mackay, and about October, 1885, Mackay assigned them for value to appellant. It appears that a portion, closely approximating one-half, of these certificates, has been surrendered or extinguished, and that the appellant, about the date last mentioned, went into possession of the lines, or a portion thereof, in Ohio. The indications, from the record, are that the mortgage given to secure these certificates was foreclosed in a court in Ohio in 1885, and the certificates, to the extent mentioned, used in buying the lines in that state at a sale made by the sheriff. The remainder of the certificates, something more than $65,000 on their face, at the time of the hearing in the circuit court and the entry of the decree from which this appeal was taken, was still held by appellant. In November, 1884, when the order was made and the certificates issued, the poles on the line from Freeport, across Indiana, to Hammond, in that state, supported ten wires; in June, 1884, there were but four wires on this line. The work of constructing it had been done by the Merchants’ Telegraph Construction Company for the Bankers’ & Merchants’ Telegraph Company of New York, pursuant to a contract between the two companies, and the latter company was then in possession. On the 17th of said month of June, the appellee, Yane, who, as foreman of the Merchants’ Telegraph Construction Company, had superintended the work of building the four wire pole line from Freeport to Hammond, contracted with the Bankers’ & Merchants’ Telegraph Company of New York to do the work of stringing upon this line six ad *966 ditional wires, furnished by said company. He completed this work, and these wires, being the lower six of the ten, were strung—that is to say, in place and attached to the poles—over the entire route from Freeport to Hammond when the receivers were appointed. His claim, or the unpaid portion thereof, against the Bankers’ & Merchants’ Telegraph Company of New York, for doing this work, is $13,771.12. After the appointment of the receivers, and after the order for the certificates, Vane did work on the line between Hammond and Chicago for which his claim, or the unpaid balance thereof, against the receivers, is $1,898.33. In June, 1884, and while Vane was stringing the six additional wires, and up to the time when the receivers were appointed, the four wire pole line from Freeport to Hammond was not only in the possession of the Bankers’ & Merchants’ Telegraph Company of New York, but that company was using the same in the business of telegraphing as part of its system of telegraph lines. The receivers succeeded to the possession, and for a time continued such use. Later, in the course of this and other litigations in which the Bankers’ & Merchants’ Telegraph Company of New York became involved, it transpired that that company had, long prior to the filing of the bill in Indiana, so contracted with another corporation, called the American Rapid Telegraph Company, that the latter company had become vested with the ownership of the four wire pole line from Freeport to Hammond. But the proprietorship of the Rapid Company did not extend to the lower six wires, and such proprietorship over the four wire pole line was, by the contract, subject to the easement or right in the Bankers’ & Merchants’ Telegraph Company of New York to have the six wires remain and be supported and be used as telegraph wires on said poles. The right, to the extent here indicated, in the Rapid Company, was enforced in a certain foreclosure litigation by the bondholders of the Rapid Company, and afterwards this right was recognized by the circuit court of the United States for the district of Indiana, and said four wire pole line was by an order of that court released from its custody, and the same has been since, used and possessed by a stranger to the present litigation; the court, so far as appears, not having parted with its possession of, or .jurisdiction over, said six strung wires.
During the November term, 1884, of the circuit court of the United States for the district of Indiana, Vane dealt with the receivers as such. He had notice of their appointment, and was put upon inquiry as to the status of the property in question, but he failed to advise the court in any way at that term touching Ms claims. After-wards, and at the May term of the said court, and on the 7th of May, 1885, he filed his mtervening petition, making the receivers parties defendant. They appeared, but what they answered is not shown in the record. The matter was referred to a master, and on January 30, 1886, he filed his report. On May 6, 1886, a decree was entered after a hearing of exceptions to this report. On appeal to the supreme court of the United States this decree was affirmed. 10 Sup. Ct. 60. It was determined by this decree that Vane had valid claims against the Bankers’ & Merchants’ Telegraph Company *967 of New York and the receivers in the sums already mentioned, but no lien of any kind for either claim. This decree was pronounced on the assumption by the court that the four wire pole line from Freeport to Hammond, and the six strung wires, constituted a single property, and belonged to the Bankers’ & Merchants’ Telegraph Company of New York. On December 7, 1889, Yane filed another intervening petition. On January 23, 1890, the receivers answered. On September 18, 1890, Yane filed a supplementary petition. This the receivers answered November 17, 1890. Yane then filed a replication, and on November 21, 1890, the matter was again referred to the master. On May 16, 1895, the report of the master came in. On May 23, 1895, exceptions were filed by the receivers. Pending the hearing on the exceptions, and on July 8, 1895, Yane filed a further petition, making parties thereto this appellant and the Farmers’ Loan & Trust Company, and calling for an answer from each. The Farmers’ Loan & Trust Company was not brought into court, and did not appear. On October 2, 1895, appellant filed its answer, setting up its ownership of the receivers’ certificates, and claiming the first and paramount lien on the six strung wires, and, apparently under the impression that such answer on its part might be taken as a cross petition, took some testimony in support thereof. But we find no replication to this answer, nor was any reply to it called for, nor was any filed. Upon this state of the record the court made a decree which is the subject of this appeal. By this decree it was adjudged that the six strung wires last mentioned were still in the custody of the court, that appellant had no lien upon or claim against said property, that the same be sold clear of any lien, and that the proceeds of the sale be applied—First, in liquidation of Yane’s claim for the $1,898.33; secondly, in liquidation of Yane’s claim for the $13,771.12; and that the remainder of the fund be paid into the registry of the court.
It is insisted, in support of this decree, that the six strung wires in question were not included as part of the property made subject to the receivers’ certificates. 'Counsel for appellee quotes from the order of the court the following language:
“Said issue of said certificates to be secured by a trust deed, in tbe nature of a first mortgage lien for $150,000, on all of tlie lines of telegraph at and between Freeport, in Ohio, and Hammond, in Indiana. * * * to be prior as a redemption debt to every other lien, claim, or incumbrance thereon.”
It seems that Yane, about the time of the appointment of the receivers, and after the six wires had been strung to the town of Hammond, disconnected the said six wires at their western ends, and grounded the same; that is to say, carried the ends to the ground, so that they could not, for thé time being, be used. In view of this fact, the insistence is that the six wires were not “lines of telegraph” between Freeport and Hammond, within the meaning of the order. It will be seen, from the recitals already quoted in this opinion, that the certificates contained on their face the statement that they were to be a lien on all property of the Bankers’ & Merchants’ Telegraph Company of every kind. In the mortgage securing these certificates, all such property, real and personal, was alienated as security for *968 these certificates; and, after the certificates and mortgage had been made, an order of the court in Indiana in express terms ratified and confirmed what had been done by the receivers. But, apart from these statements in the receivers’ certificates and in the mortgage, we are of opinion that, on the face of the orders, the six wires were made subject to the lien of the receivers’ certificates. These wires were none the less “lines of telegraph at and between Freeport, in Ohio, and Hammond, in Indiana,” merely because Vane had seen fit to detach and run them into the ground at tlieir western ends.
It is argued, again, that Vane was, at the time of the order, himself in possession of the six strung wires, and that for this reason the said order did not cover these wires as part of the property subjected to the lien of the certificates. If the owner of land contract with a third person to build a fence on that land out of lumber there provided by such owner, the entry of such contractor, and his use of the lumber in building the fence, do not give him the possession either of the land or of the lumber as against his employer. He is a mere licensee for the purposes of entering and doing the work. He has in a certain sense the custody, but as against the owner not the possession, any more than a servant of a householder would have possession, as against his master, of the utensils with which he does his work. In June, 1884, the Bankers’ & Merchants’ Telegraph Company was in possession of the four wire pole line. That company-furnished the six wires, and on the 17th of that month engaged Vane to do the work of stringing these wires. The four wire pole line was real estate. Vane was authorized to enter and put up the six wires. The possession of the entire property, including the six wires, remained in the Bankers’ & Merchants’ Telegraph Company until such possession became vested in the receivers as officers of the court, and such possession was so in said receivers when Vane assumed to ground the western ends of the wires. Moreover it had already been decided, on Vane’s first petition, that, while his claims were good, he had no lien on the property here in question, either at common law or in equity, or under any statute. To this effect is the opinion of the circuit court in Bankers’ & Merchants’ Tel. Co. of Indiana v. Bankers’ & Merchants’ Tel. Co. of New York, 27 Fed. 536, and also the opinion of the supreme court of the United States on the appeal in the same case; said cause being entitled, on such appeal, Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60. It seems entirely clear that the six wires were in possession of the court by its receivers when the certificates were issued.
It appears that Vane was made a party to the suit in Indiana during the term at which the order was made for the issue of these receivers’ certificates, but, as already stated, he did not, during that term, make any objection to that order, or ask the court to vacate or modify the same, or bring his own claims in any way to the attention of the court. After the court had made that order, and the certificates had been disposed of, and the action of the receivers in that behalf confirmed, and the term at which this was done had elapsed, the court could not unfix the lien of the certificate holders. The action of the court in that matter became final, and the power of revi *969 sion ceased with the term. In our opinion, the court in Indiana could not in Vane’s behalf displace the lien of the certificates held by this appellant, as was attempted to be done in the decree appealed from. There appears to be no contention between the parties upon the validity of these receivers’ certificates. The propriety of the action of the court upon the showing made at the November term, 1881, when the order was entered, is not in any way questioned; the only point on behalf of Vane being that the order then made did not comprehend the six wires.
It is further insisted, on behalf of appellee, that this appeal ought to be dismissed, because appellant alone prosecuted the same; whereas, it is said, the receivers and the Bankers’ & Merchants’ Telegraph Company of New York and the Bankers’ & Merchants’ Telegraph Company of Indiana were parties to the record, and interested in the decree, and there was no summons and severance whereby appellant acquired the right to prosecute this appeal without joining the others. But, in so far as concerns the subject-matter of this decree, neither the claim of Vane nor that of this appellant is disputed by the receivers, or by either of the corporations mentioned. There was no controversy except between the appellant and the appellee. Upon the question as to priority between the two, it matters not to either of the other parties what is done. So far as the Farmers’ Loan & Trust Company is concerned, it was simply the trustee in the mortgage to secure the certificates. If it were present in the case,-it could have no interest whatever, except that now represented by this appellant. But the Farmers’ Loan & Tfust Company was not even a party to the proceeding. It was not summoned, and did not voluntarily appear. The appeal, therefore, was properly brought by this appellant alone. The motion to dismiss the appeal is overruled, the decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.